UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MEI CHUN POON, individually and on behalf of
all other employees similarly situated,                          :

                                                                 :

                              Plaintiffs,                        :        17 Civ. 9647 (RA) (GWG)

                                                                 :

          -against-                                              :        REPORT AND
                                                                          RECOMMENDATION
                                                                 :
Apple NYC Corp., d/b/a Apple NYC Day Spa,
Touch of East nails Spa Inc., and Wen Chen
                                                                 :

                                                                 :

                              Defendants.                        :
------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

          Plaintiff Mei Chun Poon brought this action against defendants Apple NYC Corp, d/b/a/

Apple NYC Day Spa, Touch of East Nails Spa Inc., and Wen Chen to recover unpaid wages and

other damages arising out of defendants' violations of the New York Labor Law ("NYLL"),

New York state labor regulations, the Fair Labor Standards Act ("FLSA"), and the common law.

A default has been entered against the defendants.  The only remaining issue is the amount of

damages Poon is due.

I.        BACKGROUND

          A.        Procedural Background

          Poon filed the complaint in this action on November 29, 2017.  Collective Action

Complaint, filed Nov. 29, 2017 (Docket # 1) ("Compl.").  All defendants were served as of

December 6, 2017.  (Docket ## 8, 9). On April 27, 2018, the Clerk of Court issued certificates of

default against defendants Wen Chen, Apple NYC Corp., and Touch of East Nails Spa Inc.

(Docket ## 14-16).  On June 20, 2018, Poon filed this motion for default judgment against all

defendants.  See Notice of Motion for Default Judgment Pursuant to Fed.R.Civ. P. 55(B)(2),

filed June 20, 2018  (Docket # 17).  On July 3, 2018, Poon filed a supplemental affirmation

informing the court that the motion papers mailed to defendants were returned to sender on June

26, 2018.  Supplemental Affirmation Regarding Mailing of Papers Pursuant to Local Civil Rule

55.2, filed July 3, 2018 (Docket # 23).

      On August 17, 2018, Judge Ronnie Abrams issued an Order to Show Cause for Default

Judgment, ordering Poon to serve a copy of the motion for default judgment, supporting papers,

and the Order to Show Cause on defendants by September 7, 2018; instructing defendants to file

answering papers, if any, by September 21, 2018; and instructing defendants to appear at a

conference to be held on October 5, 2018.  Order to Show Cause for Default Judgment, filed

Aug. 17, 2018 (Docket # 24).  Poon filed affidavits of service on September 6, 2018.  (Docket

## 25-27).  Poon also filed an Amended Affidavit of Service stating that the summons and

complaint were mailed to defendant Wen Chen's actual place of business by first-class mail.

(Docket # 31).  On October 30, 2018, Judge Abrams issued an order referring the matter to the

undersigned for an inquest.

      Because the default establishes defendants' liability, see, e.g., Bambu Sales, Inc. v. Ozak

Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995), the only issue remaining is whether Poon has

supplied adequate proof of her damages.  See GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL

2150891, at *2 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the

well-pleaded allegations in a complaint establishes a defendant's liability, . . . and the sole issue

that remains before the court is whether the plaintiff has provided adequate support for the relief

it seeks.") (citations omitted); accord Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d

151, 155 (2d Cir. 1999); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155,

158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  The Second Circuit has held that an

2

inquest into damages may be held on the basis of documentary evidence alone, "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991), cert. denied, 503 U.S. 1006 (1992). Plaintiff's submissions include affidavits and documentary evidence.[1]  As these submissions provide a sufficient basis for an award of damages, no evidentiary hearing is required.  The finding of facts herein are based on the allegations in the complaint regarding liability and the admissible evidence regarding damages in plaintiff's submissions.

      B.      <u>Facts Relating to Liability</u>

In light of the defendants' default, this Court accepts as true the well-pleaded allegations contained in Poon's complaint, with the exception of those allegations relating to damages.  See, e.g., Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards liability it must accept as true all of the factual allegations of the complaint, but the amount of damages are not deemed true.  The Court must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.") (citations, brackets, and internal quotation marks omitted).

Defendants Apple NYC Corp., d/b/a Apple NYC Day Spa, ("Apple NYC Corp.") and

---

[1]  See Notice of Motion for Default Judgment Pursuant to Fed.R.Civ. P. 55(B)(2), filed June 20, 2018 (Docket # 17); Memorandum of Law in Support of Plaintiff's Motion for Default Judgment Against Defendants Apple NYC Corp., d/b/a Apple NYC Day Spa, Touch of East Nails Spa Inc., and Wen Che[n], filed June 20, 2018 (Docket # 18) ("Pl. Mem."); Affirmation of Attorney Ge Qu in Support of Motion for Default Judgment Pursuant to Fed.R.Civ. P. 55(B)(2), filed June 20, 2018 (Docket # 19) ("Qu Aff."); Affirmation of Ge Qu, filed Nov. 21, 2018 (Docket # 34) ("Qu Supp. Aff.").

Touch of East Nails Spa Inc. each have annual gross revenue of more than $500,000, operate a business location in Manhattan, and are engaged in interstate commerce.  Compl. ¶¶ 8-14. Defendant Wen Chen is the owner, officer, director, and/or managing agent of Apple NYC Corp. and Touch of East Nails Spa Inc.  Id. ¶¶ 18, 20.  Plaintiff Poon worked for defendants from July 2013 through November 12, 2017.  Id. ¶ 29.  Poon was hired as a "nail technician and masseuse" for defendant Chen's spas.  Id.  Poon was primarily assigned to Apple NYC Corp.'s location, but was also regularly assigned by Wen Chen to perform facial treatments at Touch of East Nails Spa Inc.'s location.  See Affirmation of Mei Chun Poon in Support of Motion for Default Judgment Pursuant to Fed.R.Civ. P. 55(B)(2) (annexed as Ex. 2 to Qu Aff.) ("Poon Aff."), ¶ 3. Defendant Wen Chen managed and made all business decisions including the salary an employee would receive and the number of hours an employee would work for both Apple NYC Day Spa and Touch of East Nails Spa Inc.  Compl. ¶¶ 19-20.

During the months of November through February, Poon worked four days per week from 10:15 a.m. to 8:30 p.m., with no break.  Poon Aff. ¶ 4; see Compl. ¶ 30. During these months, Poon would work approximately 41 hours per week.  Compl. ¶ 30; Poon Aff. ¶ 4. During the months of March through October, Poon would work five days per week from 10:15 a.m. to 8:30 p.m.  Compl. ¶ 31; Poon Aff. ¶ 5.  During this period, Poon was also required to cover for her coworkers whenever they asked for a leave of absence, which would require her to work six or seven days per week.  Compl. ¶ 31; Poon Aff. ¶ 5.

During her employment with defendants, Poon was paid a fixed daily rate of $75.00. Compl. ¶ 35; see id. ¶¶ 30-31; Poon Aff. ¶¶ 4-5.  Throughout her employment, Poon would receive tips from customers averaging $40-$50 per week.  Compl. ¶ 37.  Defendants would deduct and retain 10% of all Poon's credit card tips.  Id. ¶ 38.  Defendants did not provide proper

4

notice to employees of their tipped credit minimum wage rate and proper overtime rate, and failed to maintain records of tips earned by employees.  Id. ¶ 39.

II.     DISCUSSION

      A.     Status of Defendants as Poon's "Employers"

           1.     FLSA Standard

The FLSA imposes liability on an "employer" who violates the FLSA's minimum wage, overtime, and retaliation provisions.  See 29 U.S.C. §§ 216(b), (e)(2).  The FLSA defines "employer" as a person or other entity "acting directly or indirectly in the interest of an employer in relation to an employee."  Id. § 203 (a), (d).

The definition of "employ" under the FLSA "includes to suffer or permit to work."  Id. § 203(g).  An employment relationship exists under the FLSA when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citing cases).  A person or entity need not possess "formal control" over a worker to qualify as an employer; rather, the person or entity may simply exercise "functional control" over the worker in question.  Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 72 (2d Cir. 2003).

Factors relevant to determining control over a worker's employment include "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  Herman, 172 F.3d at 139 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  "No one of the four factors standing alone is dispositive."  Id. (citing Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988)).  The existence of all four indicia of employment "can be sufficient to

establish employer status." Zheng, 355 F.3d at 69 (emphasis omitted).  However, employer

status does not require the existence of all four, and a court should consider "any other factors it

deems relevant." Id. at 69, 71–72.

        2.     NYLL Standard

The NYLL's definition of employment is nearly identical to the FLSA's.  Compare 29

U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."), with N.Y. Lab. L. § 2(7)

("'Employed' includes permitted or suffered to work."); see also Garcia v. La Revise Assocs.

LLC, 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) ("New York's 'employer' provisions are

equally [as] broad [as the FLSA's].") (citing Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13

(S.D.N.Y. 2010)).  Thus, courts in this circuit "hold that the New York Labor Law embodies the

same standards for joint employment as the FLSA." Chen v. St. Beat Sportswear, Inc., 364 F.

Supp. 2d 269, 278 (E.D.N.Y. 2005) (citing cases); accord Garcia v. JonJon Deli Grocery Corp.,

2015 WL 4940107, at *3 (S.D.N.Y. Aug. 11, 2015) ("district courts in this Circuit have

consistently interpreted the definition of 'employer' under the New York Labor Law

coextensively with the definition used by the FLSA") (quoting Inclan v. N.Y. Hospitality Grp.,

Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015)).

        3.     Status of Apple NYC Corp., Touch of East Nails Spa Inc., and Wen Chen
              as Employers

Poon was employed by Apple NYC Corp. and Touch of East Nails Spa Inc. from July

2013 to November 12, 2017.  Compl. ¶ 29; Poon Aff. ¶ 2.  Poon worked primarily as a nail

technician and masseuse at Apple NYC Day Spa, but was also regularly assigned by to perform

facial treatments at Touch of East Nails Spa Inc.  Poon Aff. ¶ 3.  Apple NYC Corp. and Touch of

East Nails Spa Inc. controlled Poon's daily activities through Wen Chen, who made all business

decisions for both spas, determined the number of hours Poon worked, determined the amount of her salary, <u>see</u> Compl. ¶ 19-21, and assigned Poon to work either at Apple NYC Spa or at Touch of East Nails Spa Inc, <u>see</u> Poon Aff. ¶ 3.  Accordingly, Apple NYC Corp. and Touch of East Nails Spa Inc. held sufficient control over Poon to qualify as her employers.

4.    <u>Status of Wen Chen as an Employer</u>

During the period in which Poon worked for Apple NYC Corp. and Touch of East Nails Spa Inc., Wen Chen was the "owner, officer, director and/or managing agent" of both entities. <u>See</u> Compl. ¶¶ 18, 20.  Chen "manages and makes all business decisions including but not limited to the amount in salary [each] employee will receive and the number of hours employees will work" at Apple NYC Corp. Compl. ¶ 19.  With respect to Touch of East Nails Spa Inc., Wen Chen "participated in its day-to-day operations," <u>id.</u> ¶ 20, and "manages and makes all business decisions including but not limited to the amount in salary [each] employee will receive and the number of hours employees will work," <u>id.</u> ¶ 21.  Poon states that while she "primarily worked at Apple NYC Corp. . . . Wen Chen regularly assigned [her] to perform facial treatments for Touch of East Nails Spa."  Poon Aff. ¶ 3.  Thus, Chen exercised sufficient control over Poon's work to qualify as Poon's employer.

B.    <u>Overtime Wages</u>

1.    <u>Statute of Limitations</u>

Under both the FLSA and NYLL, any employee who works more than forty hours per week must be paid at a rate not less than 150% of the employee's regular hourly rate for all hours worked beyond forty.  29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. Tit. 12 § 142–2.2.  The statute of limitations to bring an FLSA claim is two years, while the statute of limitations under the NYLL is six years.  29 U.S.C. § 255(a); N.Y. Lab. L. § 663(3).  Under the

7

FLSA, however, when an employer's violation of the Act is "willful," a three-year statute of

limitation applies.  29 U.S.C. 255(a); accord Parada v. Banco Industrial De Venezuela, C.A., 753

F.3d 62, 70 (2d Cir. 2014) (citations omitted); McLean v. Garage Mgmt. Corp., 2012 WL

1358739, at *7 (S.D.N.Y. Apr. 19, 2012).

"For an employer's actions to be willful, the employer must have 'either [known] or

showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"

D'Arpa v. Runway Towing Corp., 2013 WL 3010810, at *4 (E.D.N.Y. June 18, 2013) (quoting

McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).  It is settled that "[m]ere

negligence is insufficient," Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009),

and that "[a]n employer may act unreasonably and yet not recklessly."  McLean, 2012 WL

1358739, at *7 (citing McLaughlin, 486 U.S. at 135 n.13).

In the instant matter, Chen, as the "owner, officer, director and/or managing agent of

Apple NYC Corp. and Touch of East Nails Spa Inc." Compl. ¶¶ 18-21, "manages and makes all

business decisions" related to both spas and the company, see id.  The complaint contains an

uncontroverted allegation that defendants' acts as alleged in the complaint were "committed . . .

knowingly, intentionally, and willfully," id. ¶ 27, and that defendants "knew that the

nonpayment of minimum wages, overtime pay, spread of hours premium, and failure to provide

the required wage notice at the time of hiring would financially injure Plaintiff and similarly

situated employees and violate state and federal laws," id. ¶ 28.  This is sufficient to conclude

that the Defendants acted willfully.  See, e.g., Marshall v. UBS Fin. Servs. Inc., 2015 WL

4095232, at *4 (S.D.N.Y. July 7, 2015) (on motion to dismiss, FLSA violations were "wilful"

where "[t]he Amended Complaint allege[d] both that the defendant had a corporate policy of

perpetrating wage violations, detail[ed] what the policy was, and allege[d] that the defendant's

8

violations were willful."); <u>Vinas v. Pullini Subsurface Contractors, Inc.</u>, 2012 WL 6641662, at

*4 (E.D.N.Y. Oct. 5, 2012) (allegation in complaint that defendant's failure to properly

compensate plaintiff for overtime was "willful" sufficient to apply the three-year statute of

limitations) (citation omitted).  Accordingly, we apply a three-year statute of limitations for the

FLSA claims.

2.    <u>Calculation of Damages</u>

Poon worked for Defendants from July 2013 until November 12, 2017.  Compl. ¶ 29;

Poon Aff. ¶ 2.  Poon filed her complaint in this matter on November 29, 2017.  <u>See</u> Compl.

Accordingly, defendants are liable for any violations of the FLSA that occurred during the three

years preceding that filing, from November 29, 2014, to November 29, 2017, and for any NYLL

violations for the period of July 15, 2013 through November 29, 2017.[2]

I. <u>Back pay - Minimum Wages and Overtime Owed</u>

Failure to pay the required minimum wage is actionable under both the FLSA and the

NYLL.  <u>See</u> 29 U.S.C. § 216; N.Y. Lab. L. § 663.  Throughout her employment, defendants paid

Poon a regular rate of $7.32 per hour.  <u>See</u> Damages Worksheet; <u>see also</u> 29 C.F.R. § 778.112

(providing method of calculating regular rate and overtime rate where employee is "paid a flat

sum for a day's work").  From the beginning of her employment until December 31, 2013, this

wage was above both the New York State and federal minimum wage.  <u>See</u> 29 U.S.C.

§ 206(a)(1)(C) (providing a federal minimum wage of $7.25 per hour as of July 24, 2009); N.Y.

---

[2]  Six years prior to the filing date of the complaint would be November 29, 2011.
However, because Poon did not begin her employment with Defendants until June 2013, liability
under the NYLL extends to the beginning of Poon's employment.  Because Poon lacks
information regarding her exact start date, she uses July 15, 2013, as an estimate for calculating
damages, <u>see</u> Apple NYC Inc. Damages Calculations (annexed as Ex. 6 to Qu Aff.) ("Damages
Worksheet"), 1 n.1, and we will as well.

9

Lab. L. § 652 (2013) (providing a minium wage of $7.15 "or, if greater, such other wage as may be established by federal law pursuant to 29 U.S.C. § 206 or its successors" as of January 1, 2007).  Accordingly, for this period, there was no minimum wage violation under either the FLSA or the NYLL.

On December 31, 2013, the New York State minimum wage increased to $8.00 per hour, and continued to increase regularly through the end of Poon's employment with defendants.  See NYLL § 652(1).  However, the federal minimum wage remained at $7.25 per hour.  See 29 U.S.C. § 206(a)(1)(C).  Accordingly, starting December 31, 2013, defendants were in violation of the minimum wage provisions of the NYLL, but not of the FLSA.

Both the FLSA and NYLL also require that an employee be paid an overtime rate not less than one and one-half times his or her regular rate for hours worked in excess of forty hours per workweek.  See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; see also Bennett v. Progressive Corp., 225 F. Supp. 2d 190, 215 (N.D.N.Y. 2002).  Here, though, with the exception of the period before December 13, 2013, Poon's regular rate was below the minimum wage required in New York.  Accordingly, her overtime rate is calculated with reference to the minimum wage to which she was actually entitled under the NYLL.  See 29 C.F.R. 778.100 (regular rate, for purposes of calculating overtime, may not be less than statutory minimum wage); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (providing that overtime rate should be computed in the same manner as under the FLSA).

Where the claims under the FLSA and NYLL are identical and overlap, courts in this circuit routinely find that the "federal claim subsumes [the] state law claim for the overlapping damages period," Rios v. Neighborhood Const. Corp., 2009 WL 3335354, at *1 n.2 (S.D.N.Y. Oct. 14, 2009) (citing Khan v. IBI Armored Servs., Inc., 474 F. Supp. 2d 448, 450 n.1 (E.D.N.Y.

2007)), and award damages for that period pursuant to the FLSA only.  Here, while the period of actionable FLSA and NYLL claims overlaps from November 27, 2014, onward, the claims for unpaid minimum wages and overtime wages are not identical because defendants violated only the NYLL minimum wage provisions.  Accordingly, damages should be awarded only pursuant to the NYLL.

Poon affirms that "[d]uring the winter months from November until February," she worked "four (4) days a week from 10:15 a.m. to 8:30 p.m., without a break . . . for a daily rate of $75.00."  Poon Aff. ¶ 4.  During this period, Poon worked "approximately forty-one (41) hours per week."  Id.  Though she states that there was some variation in her work schedule from week to week, in her calculations Poon provides that she worked 41 hours per week for all weeks that fall during the winter months.  See Damages Worksheet; see also Apple NYC Inc. Damages Calculations (annexed as Ex. B to Qu Supp. Aff.) ("Revised Damages Worksheet").  With respect to the months of March until October, Poon affirms that her schedule required her to work "five (5) days a week from 10:15 a.m. to 8:30 p.m."  Poon Aff. ¶ 5.  She was also paid a daily rate of $75.00 for these time periods.  Id.  During these months, Poon was additionally required to cover for coworkers who requested leaves of absences, id., and Poon would work "between fifty-one point twenty-five (51.25) and seventy-one point seventy-five (71.75) hours per week."  Id.  In her damages calculation, however, Poon uses the lower number of 51.25 hours per week for each of the weeks that fall during the months of March through October. See Damages Worksheet.  Accordingly, we use that figure as well

In her damages calculation, Poon breaks down the time of her employment with defendants into fourteen periods, which reflect both the seasonal differences in her own work schedule and changes to the New York minimum wage.  See Damages Worksheet; Revised

11

Damages Worksheet.  The Court finds these pay periods useful to calculate the damages owed to Poon.  However, the Court has performed its own calculations and arrives at different totals than those provided in Poon's Damages Worksheet.[3]  For the period of July 15, 2013, through December 30, 2013, Poon is not owed minimum wage damages because she was paid in excess of the federal and state minimum wage.  Beginning on December 31, 2013, the regular rate of $7.32 per hour defendants paid Poon fell below the New York State minimum wage, which increased to $8.00 per hour on that date.  See N.Y. Lab. L. § 652(1).  The New York State minimum wage subsequently increased to $8.75 on December 31, 2014; to $9.00 on December 31, 2015; and finally to $10.50 on December 31, 2016, for "small employers" in New York City.[4]  Id.  The Court calculates the unpaid minimum wages and overtime damages owed to

---

[3] In her Damages Worksheet, Poon provides a number of inaccurate totals with respect to her unpaid wage calculations.  See Damages Worksheet; Revised Damages Worksheet.  The equation she presents for the calculation of damages is correct.  It is the total that is incorrect.  For example, during Work Period Three, the minimum wage was $8.00 per hour; Poon's legal overtime rate was accordingly $12/hour; Poon worked 11.25 hours of overtime each week; Poon was actually paid $375 each week; and the period includes 35 weeks.  Poon presents the following formula: ($8 x 40 + $12 x 11.25 - $375) x 35.  This comes out to $2,800.00 in unpaid wages and overtime for the period.  In other words, during this period Poon was paid $80 less than what she was owed each week ($80 x 35 = $2800).  In Poon's Damages Worksheet, however, she states that the product of this equation is $16,712.50.  Damages Worksheet at 3.  It is unclear how Poon arrived at this figure.  Her total is relatively close to, but not equal to, the amount of wages Poon was actually owed, without subtracting the amount she was paid.  Poon's unpaid wages damages calculations of course impact liquidated damages calculations and calculation of prejudgment interest.  Accordingly, the Court has redone all the calculations, using the numbers supplied by Poon only regarding her daily rate and the numbers of hours she worked.

[4] Poon does not affirm that her employers employed more than eleven employees, which would make them a "large employer" subject to a higher minimum wage under the NYLL.  See N.Y. Lab. L. § 652(1)(a)(I); see also Compl.; Qu Aff.; Poon Aff.; Qu Supp. Aff.; Affirmation of Mei Chun Poon (annexed as Ex. A to Qu Supp. Aff.) ("Poon Supp. Aff.").  Though Poon originally requested the higher minimum wage rate for large employers, see Damages Worksheet at 8-11, in her revised calculation she requests the minimum wage applicable to small employers, see Revised Damages Worksheet at 8-10.

Poon by multiplying the minimum wage or her regular wage, whichever is higher, by forty.  We add to that sum the applicable overtime rate times the number of overtime hours worked per week.  We multiply the sum of those two numbers by the number of weeks in the work period, and then subtract the amount of wages defendants actually paid to Poon during that period.  We calculate the amount actually paid by multiplying $75 by the number of days worked.

Poon also alleges that she is "still owed $1,878 for worked performed as of November 12, 2017," which is "the result of defendants' nonpayment of promised wages at $75 per day."  Poon Supp. Aff. ¶ 7.  To simplify the calculations — and because it is not entirely clear on which days or weeks defendants failed to pay Poon — we subtract $1878 from the total amount "actually paid" to Poon, and add it to the total amount of damages owed to her.  These calculations are detailed in the chart annexed as Exhibit A.  The total amount in minimum wage and overtime violation payments is $26,243.77

### ii. Spread of Hours Premium

Under the NYLL, an employee must "receive one hour's pay at the basic minimum hourly wage rate" in addition to the regular minimum wage for each workday "in which . . . the spread of hours exceeds 10 hours."  N.Y. Comp. Codes R. & Regs. Tit. 12, § 142–2.4(a).  "The term 'spread of hours' is defined as 'the length of the interval between the beginning and end of an employee's workday . . . includ[ing] working time plus time off for meals plus intervals off duty."  Inclan v. N. Y. Hospitality Grp., Inc., 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) (citing N.Y. Comp. Codes R. & Regs. Tit. 12, § 146–1.6).  Poon states in her declaration that her regular work hours were 10:15 a.m. to 8:30 p.m., Poon Aff. ¶¶ 4-5, which comes to 10.25 hours per day.

An award for "spread of hours" pay for non-restaurant or hotel workers, however, is

appropriate only when the employee is paid the minimum wage.[5]  We addressed this issue in

Williams v. Tri-State Biodiesel, L.L.C., 2015 WL 305362 (S.D.N.Y. Jan. 23, 2015):

> As courts in this circuit have noted, the language [of N.Y. Comp. Codes R. & Regs. Tit. 12, § 142–2.4(a)] makes reference to payment only beyond "the minimum wage."  See, e.g., Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d 457, 474 (E.D.N.Y. 2011).  Moreover, the New York State Department of Labor — the agency that issued these regulations — has issued its own Opinion Letters "interpreting New York's spread of hours provision as applying only to employees earning minimum wage."  Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 369 (S.D.N.Y. 2012) (citing N.Y.S. Dep't of Labor 3/16/07 Opinion Letter at 1, File No. RO–07–0009); accord Sosnowy, 764 F. Supp. 2d at 473.  Thus, recent case law has been nearly unanimous that the spread-of-hours requirement extends only to workers paid at the minimum-wage level.  See, e.g., Juarez v. Precision Apparel, Inc., 2013 WL 5210142, at *12 (E.D.N.Y. Sept. 13, 2013); Malena, 886 F. Supp. 2d at 368-69; Zubair v. EnTech Eng'g P.C., 808 F. Supp. 2d 592, 601 (S.D.N.Y. 2011); Sosnowy, 764 F. Supp. 2d at 473-74; Espinosa v. Delgado Travel Agency, Inc., 2007 WL 656271, at *2 (S.D.N.Y. Mar. 2, 2007), partially reconsidered by 2007 WL 1222858 (S.D.N.Y. Apr. 24, 2007).  It appears that the only courts that have concluded otherwise have relied on the case of Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339-40 (S.D.N.Y. 2005).  But the defendants in that case did "not offer any argument that the regulation's language itself dictates" that it be limited to workers earning the minimum wage, id. at 340, and the case has been repeatedly criticized, see, e.g., Guadalupe v. Tri-State Emp't, Mgmt. & Consulting, Inc., 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug 28, 2013) (citing cases); Roach v. T.L. Cannon Corp., 889 F. Supp. 2d 364, 367-68 (N.D.N.Y. 2012) (citing cases).

Id. at *16.

Accordingly, Poon is entitled to spread-of-hours damages for the days when she was paid

at (or below) the minimum wage, which are all days starting December 31, 2013.  The Court

calculates the spread-of-hours damages owed by multiplying the number of days worked times

---

[5] The Court recognizes that in its decision in Cesario v. BNI Const., Inc., 2008 WL 5210209 (S.D.N.Y. Dec. 15, 2008), cited by Poon, see Pl. Mem. at 7-8, this Court awarded spread-of-hours damages without reference to whether plaintiffs in that case where paid above the minimum wage.  See 2008 WL 5210209, at *4.  However, the reasoning in the cases discussed above and the above-referenced letter issued by the New York State Department of Labor have persuaded the Court otherwise.

the applicable minimum wage, as detailed in the chart annexed as Exhibit B.  The total spread-of-damages amount owed is $8379.75.

        iii. Liquidated Damages

    "'Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages' for violations of the FLSA's minimum wage and overtime provisions."  Inclan, 95 F. Supp. 3d at 504 (citing Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (some internal citations omitted).  While a district court has "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," id. (internal citation omitted), clearly no such showing has been made here.

    "The New York State Legislature has amended the NYLL liquidated damages provision twice since 2009, making it easier for employees to claim liquidated damages."  Rana v. Islam, 887 F.3d 118, 122 (2d Cir. 2018) (citing Inclan, 95 F. Supp. 3d at 504).  "Prior to 2009, an employee bore the burden to demonstrate the employer's willful failure to pay wages, and upon establishing this, the employee could be awarded as liquidated damages an amount up to 25% of the total amount of wages due."  Id. (citation omitted).

        But in 2009, the liquidated damages provision was amended to bring it more closely in line with the FLSA; the burden was shifted to the employer to prove[ ] a good faith basis to believe that its underpayment of wages was in compliance with the law in order to avoid liquidated damages.

Id. at 122-23 (internal citations and punctuation omitted).  "In 2010, the NYLL liquidated damages provision was amended again so that an employee may 'recover the full amount of any underpayment, all reasonable attorney's fees, [and] prejudgment interest as required under the

civil practice law and rules[.]'" Id. at 123 (citing N.Y. Lab. L. § 198).  Further, the Legislature

provided that "'unless the employer proves a good faith basis to believe that its underpayment of

wages was in compliance with the law, an additional amount as liquidated damages equal to one

hundred percent of the total amount of the wages found to be due' must also be paid."  Id.

(quoting N.Y. Lab. L. § 198).  "While the wording of the FLSA and NYLL liquidated damages

provisions are not identical, there are no meaningful differences, and both are designed to deter

wage-and-hour violations in a manner calculated to compensate the party harmed."  Id. (citations

and internal punctuation omitted).  Also, because "[d]ouble recovery is generally disfavored,"

Rana held that the NYLL and FLSA do not "allow[] duplicative liquidated damages for the same

course of conduct."  Id.

    Poon requests $118,660.95 in liquidated damages under the FLSA.  See Pl. Mem. at 9.[6]

She also claims to be entitled to $9295.00 in liquidated damages under the NYLL, id. at 10,

though she does not give any explanation as to why she is entitled to this amount.  In her

Damages Worksheet, Poon calculates the amount due to her in liquidated damages under the

NYLL for various work periods, but does not break out and calculate the amount owed to her

under the FLSA in liquidated damages, and bases these amounts on erroneous minimum wage

and overtime calculations, see footnote 3 above.  In any case, Poon may not recover duplicative

liquidated damages.  See Rana, 887 F.3d at 122-23.  Because we award her minimum wage and

overtime violation damages pursuant to the NYLL, rather than the FLSA, we also award

liquidated damages pursuant to the NYLL.  Accordingly, Poon is entitled to liquidated damages

---

[6] This figure represents the 100% of the minimum wage and overtime claims that Poon
incorrectly calculated, as detailed in footnote three to this report.  In another portion of her
memorandum of law, Poon claims to be entitled to $107,487.95 in liquidated damages.  Pl.
Mem. at 10.

in the amount of 100% of her unpaid minimum wages, unpaid overtime, and spread-of-hours payments, which totals $34,623.52.

iv. <u>Failure to Provide Wage Statements Under NYLL</u>

Since April 9, 2011, the New York Labor Law has required employers to "furnish each employee with a statement with every payment of wages," which includes, <u>inter</u> <u>alia</u>, the rate of payment, the gross wages provided, and the applicable overtime rate.  N.Y. Lab. L. § 195(3).  Defendants failed to provide Poon with such  paystubs.  Compl. ¶¶ 103-04; Poon Aff. ¶ 9.

Prior to February 27, 2015, statutory damages for violating this provision were limited to $100 per work week, not to exceed $2500.  <u>See</u> 2010 N.Y. Laws ch. 564 § 7; <u>accord</u> <u>Baltierra v. Advantage Pest Control Co.</u>, 2015 WL 5474093, at *10 (S.D.N.Y. Sept. 18, 2015).  Since that date, the statute was amended to require a penalty of $250 for each work day that the violations occurred, not to exceed $5000.  <u>See</u> N.Y. Lab. L. § 198(1–d).  The statutory maximum is accordingly reached after twenty work days.  Poon's damages calculations indicate that she worked a total of 1035 days for Defendants.  Accordingly, Poon is entitled to the $5,000 statutory maximum.

v. <u>Failure to Provide Notices Under NYLL</u>

NYLL section 195(1) requires that, the time of hiring, an employer "provide his or her employees, in writing in English and in the language identified by each employee as [their] primary language," notice of

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone

17

number of the employer; plus such other information as the commissioner deems material and necessary.

Id. § 195(1)(a); accord Franco v. Jubilee First Ave. Corp., 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016).  The notice must also state an employee's regular hourly rate and overtime rate of pay.  N.Y. Lab. L. § 195(1)(a).  Under the statute, statutory damages of $50 per workday, not to exceed $5000, may be assessed for failure to comply with this provision.  See id. § 198(1-b). Here, it is undisputed that Defendants did not provide Poon with the required notice at the time of her hiring or thereafter.  See Compl. ¶ 40; Poon Aff. ¶ 8.  Accordingly, because Poon worked well over 100 workdays — the number of days that brings a plaintiff to the statutory maximum — she should be awarded the statutory maximum of $5000.

    C. Pre-Judgment Interest

    A plaintiff who prevails on a NYLL wage claim is entitled to prejudgment interest on any "underpayment" of wages.  See N.Y. Lab. L. § 198(1-a); Schalaudek v. Chateau 20th St. LLC, 2017 WL 729544, at *10 (S.D.N.Y. Feb. 24, 2017),  modified and adopted in relevant part by 2017 WL 1968677 (S.D.N.Y. May 11, 2017); Santana v. Latino Express Rests., Inc., 198 F. Supp. 3d 285, 294 (S.D.N.Y. 2016); Castillo v. RV Transport, Inc., 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016).  Prejudgment interest is not available for violations of the wage statement or wage notice provisions.  See N.Y. Lab. L. § 198(1-b), (1-d); Schalaudek, 2017 WL 729544, at *10–11 (awarding prejudgment interest on unpaid wages and overtime, but not on statutory damages for notice violations).  Also, the award of prejudgment interest applies only to the amount of underpayment of wages, not the liquidated damages.  See Ortega v. JR Primos 2 Rest. Corp., 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017) ("Prejudgment interest is available on actual damages awarded under the NYLL, but not on liquidated damages.") (citing

Xochimitl v. Pita Grill of Hell's Kitchen, Inc., 2016 WL 4704917, at *18 (S.D.N.Y. Sept. 8, 2016)); accord Qui Hua Tan v. Voyage Express Inc., 2017 WL 2334969, at *8 (E.D.N.Y. May 25, 2017).

      Prejudgment interest in New York runs at the rate of nine percent per annum.  N.Y. C.P.L.R. 5001(a), 5004.  The starting date from which a court computes this interest is "the earliest ascertainable date the cause of action existed."  Conway v. Icahn & Co. Inc., 16 F.3d 504, 512 (2d Cir. 1994) (quoting N.Y. C.P.L.R. 5001(b)).  However, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); see also Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998) ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date . . . .'") (citing 155 Henry Owners Corp. v. Lovlyn Realty Co., 231 A.D.2d 559 (2d Dep't 1996)).

      Here, Poon's claims for unpaid wages arose on different dates from July 15, 2013, to November 12, 2017.  The midpoint of these days is September 14, 2015.  We elect to use this date to award Poon prejudgment interest on the wage portion of her award.  She is therefore entitled to nine percent annual interest on her unpaid wages damages of $34,623.52 from September 14, 2015, until the date judgment is entered, or $8.54 per day ($34,623.52 times .09 divided by 365).

     D. Attorney's Fees

      Because she has made successful claims under the NYLL and FLSA, Poon is entitled to a further award of reasonable attorney's fees.  29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1); accord

Baltierra v. Advantage Pest Control Co., 2015 WL 5474093, at *12 (S.D.N.Y. Sept. 18, 2015)

(citing Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009)).  In determining this

fee award, "[t]he most useful starting point . . . is the number of hours reasonably expended on

the litigation multiplied by a reasonable hourly rate."  Arbor Hill Concerned Citizens

Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 186 (2d

Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); accord Stanczyk v. City of

New York, 752 F.3d 273, 284 (2d Cir. 2014).  This calculation yields a "presumptively

reasonable fee,"Arbor Hill, 522 F.3d at 183, and is commonly referred to as the "lodestar."

Although district courts remain free to modify this award to ensure that it represents a reasonable

fee and incorporates important or unique aspects of the case, see, e.g., Clarke v. Frank, 960 F.2d

1146, 1153 (2d Cir. 1992), the lodestar figure "includes most, if not all, of the relevant factors

constituting a reasonable attorney's fee."  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543

(2010) (citation and internal quotation marks omitted).

      1.    Reasonable Hours

It is well established that "any attorney . . . who applies for court-ordered compensation

in this Circuit . . . must document the application with contemporaneous time records . . .

specify[ing], for each attorney, the date, the hours expended, and the nature of the work done."

N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983);

accord Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 149-50 (2d Cir. 2014).  Here,

plaintiff's counsel has submitted a summary of contemporaneous time records which describe

the task performed, who performed this task, the amount of time spent working, the date on

which the work occurred, each attorney's rate, the total amount of time worked by each attorney,

and the total amount billed by each attorney.  See "Revised Attorney Bill" (annexed as Ex. C to

Qu Supp. Aff.) ("Revised Attorney Bill").  With regard to the review of such records, a court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Angamarca v. Pita Grill 7 Inc., 2012 WL 3578781, at *12 (S.D.N.Y. Aug. 2, 2012) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992), cert. denied, 506 U.S. 1053 (1993)).  In addressing this question, courts should not, however, engage in "an ex post facto determination of whether attorney hours were necessary to the relief obtained."  Grant, 973 F.2d at 99.

Additionally, if a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its calculation of the presumptively reasonable fee.  Hensley, 461 U.S. at 434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6 (2d Cir. 1999) (citations omitted); Farmer v. Hyde Your Eyes Optical, Inc., 2015 WL 2250592, at *15 (S.D.N.Y. May 13, 2015).  However, as the Supreme Court noted in Hensley, "[t]here is no precise rule or formula for making these determinations."  461 U.S. at 436.  Because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," Carey, 711 F.2d at 1146, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'" Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146).  Thus, a district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items."  Lunday, 42 F.3d at 134.

Here, the time logs submitted by plaintiff's counsel reflect that there are two attorneys who worked on this case: Jian Hang and Ge Qu.  Together, they expended  24.6 hours.  See

Revised Attorney Bill.  The time logs provide detailed descriptions of the tasks completed, and the time expended on each task is reasonable.  The total number is within the range of hours routinely awarded in cases in similar postures.  See, e.g., Galeana v. Lemongrass on Broadway Corp., 2014 WL 1364493, at *14-15 (S.D.N.Y. Apr. 4, 2014) (finding 32.7 hours "modest" and "reasonable to accomplish what needed to be done to achieve success for their clients" in a similar FLSA and NYLL default case); Greathouse v. JHS Sec., Inc., 2012 WL 3871523, at *10 (S.D.N.Y. Sept. 7, 2012) (awarding 24.2 hours in a default matter); Santillan v. Henao, 822 F. Supp. 2d 284, 300 (E.D.N.Y. 2011) (awarding 25.2 hours in fees for a similar default matter).

Accordingly, Poon should be awarded the 24.6 hours she requested.

2.    Reasonable Hourly Rate

In determining whether the hourly rate is reasonable, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999).

To determine an appropriate hourly rate, Arbor Hill directs that a court engage in the following process:

[T]he district court, in exercising its considerable discretion, [is] to bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.

22

522 F.3d at 190 (emphasis in original).  The "Johnson factors" are those laid out in Johnson v.

Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).  These are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19).

Arbor Hill specifically identified the following factors to be considered in determining

what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Id. at 184.

Importantly, Arbor Hill held that a court must "step[] into the shoes of the reasonable,

paying client, who wishes to pay the least amount necessary to litigate the case effectively."  522

F.3d at 184 (emphasis added).  In other words, whether the attorneys on this case properly

command the rates they seek in the marketplace is not dispositive of the rate that they are to be

awarded.  Rather, Arbor Hill demands that we determine the cheapest hourly rate an effective

attorney would have charged.

Here, in addition to the Revised Attorney Bill, Poon's counsel has submitted statements

attesting to the experience of Mr. Hang and Mr. Qu.  See Qu Supp. Aff. ¶¶ 27-31.  The Court has

considered all of the factors in Johnson and Arbor Hill and notes that this case was not unusually

complex; that it did not demand great resources; that it involved no contested litigation; and that

there were no particular timing demands on the case.  On the other hand, counsel and his firm

practice extensively in the field of labor and employment law, specializing in wage and hour

cases.  See Qu Supp. Aff. ¶¶ 27-31.

 Mr. Hang's requested rate of $350.00 is appropriate.  Mr. Hang has practiced law for

thirteen years, and has spent approximately 90% of this time on employment-related issues.  Id.

¶ 27.  He has represented plaintiffs in wage and hour claims in federal court in fifty lawsuits.  Id.

¶ 28.  "Courts in this District have determined that a fee ranging from $250 to $450 per hour is

appropriate for experienced civil rights and employment law litigators." Chuk On Chan v. Good

Chows Inc., 2017 WL 9538901, at *7 (S.D.N.Y. Mar. 3, 2017) (citing cases).  Courts in this

Circuit recently have found $350 per hour to be a reasonable rate for Mr. Hang's services, given

his employment litigation experience.  See Chuck On Chan, 2017 WL 9538901, at *7; Zhen

Ming Chen v. New Fresco Tortillas Taco LLC, 2015 WL 5710320, at *10 (S.D.N.Y. Sept. 25,

2015); Yun Hong Hua v. Eight Star Inc., 2015 WL 2354322 at *4 (E.D.N.Y. May 15, 2015);

Liang Huo v. Go Sushi Go 9th Ave., 2014 WL 1413532 at *7-8 (S.D.N.Y. Apr. 10, 2014).

Accordingly, the Court finds that the rate requested is reasonable, and awards Mr. Hang a rate of

$350 per hour.

 Mr. Qu was admitted to this district in 2016, two years ago.  Qu Supp. Aff. ¶ 31.  Mr. Qu

"regularly represent[s] plaintiffs and defendants in employment litigation, including FLSA, Title

VII and ADA actions."  Id.  Mr. Qu affirms that his firm "has routinely billed clients the hourly

rate of $300 for [his] services," id., but does not state whether the firm has ever billed FLSA

clients at such a rate.  Indeed, Mr. Qu notes that he represents clients in other types of

employment matters, including representing defendants.  He requests a rate of $275, but this rate

is higher than the rate normally awarded to second-year associates in FLSA cases.

See Lizondro-Garcia v. Kefi LLC, 2015 WL 4006896, at *7 (S.D.N.Y. July 1, 2015) (collecting

cases in which third-year associates were awarded between $200-225 per hour); accord Gonzalez

v. Scalinatella, Inc., 112 F. Supp. 3d  5, 28 (S.D.N.Y. 2015) ("Generally, rates in excess of

$225.00 per hour are reserved for FLSA litigators with more than three years' experience.");

Agudelo v. E & D LLC, 2013 WL 1401887, at *2 (S.D.N.Y. Apr. 4, 2013) (awarding "the

market rate for the services of . . . junior associates" in wage-and-hour cases of "$200 per hour"

to a third-year associate).  Poon cites no case law in support of the proposition that junior

associates should be paid a higher fee.  See Pl. Mem. at 12-13.  Indeed, Poon cites Cesario v.

BNI Const., Inc., 2008 WL 5210209, at *9 (S.D.N.Y. Dec. 15, 2008) and notes that in that case,

the court awarded $200/hour to associates.  Pl. Mem. at 13.  Accordingly, this Court awards Mr.

Qu a fee of $200 per hour.

The hours and rates described above produce an award of $5910.00 as described in the

following table:

| Name | Hours Awarded | Rate Requested | Rate Awarded | Amount Awarded |
|------|---------------|----------------|--------------|----------------|
| Jian Hang | 6.6 | $350.00 | $350.00 | $2310.00 |
| Ge Qu | 18 | $250.00 | $200.00 | $3600.00 |
| Total Award | | | | $5910.00 |

E.  Costs

Plaintiffs successful under FLSA and NYLL also may be entitled to costs, which "'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989)); accord Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012).  Here, Plaintiff's counsel has requested $819.53 in costs, Pl. Mem. at 14, including $419.53 in process service fees, see Subpoena Server Services Invoice 2220 (annexed as Ex. 8 to Qu Aff.), and a $400 filing fee.  These costs are recoverable.  See, e.g., Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015) (awarding costs for a filing fee and service of process); Tacuri v. Nithin Constr. Co., 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015) (noting that "a court can take judicial notice of the court's filing fee and award it" and awarding filing fee).  Accordingly, Poon is awarded $819.53 in costs.

III.    TOTAL OF SUMS AWARDED

Poon is entitled to a judgment in amount of $85,976.57 plus prejudgment interest.  The $86,546.67 figure consists of: (1) $26,243.77 in unpaid wages, minimum wages, and overtime wages; (2) $8379.75 in spread-of-hours payments; (3) $34,623.52 in liquidated damages under the NYLL; (4) $5000.00 for failure to provide wage statements; (5) $5000.00 for failure to provide required notices as required by N.Y. Lab. L. § 195(3); (6) $5910.00 in attorney's fees; and (7) $819.53 in costs.  In addition, Poon should be awarded $8.54 per day in prejudgment interest from September 15, 2014, until the date judgment is entered.  Joint and several liability is appropriate based on the findings above that all defendants were Poon's employer and therefore responsible for the acts giving rise to liability.  See, e.g., Zhen Ming Chen, 2015 WL 5710320, at *11 (citing cases).

26

IV.   <u>CONCLUSION</u>

Poon's motion for a default judgment (Docket # 17) should be granted, and judgment should be awarded in favor of Poon and against defendants Apple NYC Corp., Touch of East Nails Spa Inc., and Wen Chen, jointly and severally, in the amount of $85,976.57.  In addition, Poon should be awarded $8.54 per day in prejudgment interest from September 15, 2014, until the date judgment is entered.

<b><u>PROCEDURE FOR FILING OBJECTIONS TO THIS<br>REPORT AND RECOMMENDATION</u></b>

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Ronnie Abrams at 40 Centre Street, New York, New York 10007.  Any request for an extension of time to file objections or responses must be directed to Judge Abrams.  If a party fails to file timely objections, that party <u>will not be permitted to raise any objections to this Report and Recommendation on appeal</u>.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).

Dated:  January 2, 2019
         New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

27

Copy sent to:

Wen Chen
677 Amsterdam Avenue
New York, NY 10025

Apple NYC Day Spa
Attn: Wen Chen
677 Amsterdam Avenue
New York, NY 10025

Touch of East Nails Spa Inc.
Attn: Wen Chen
11 West 20th Street
New York, NY 10011

Poon v. Apple NYC, 17-cv-9647, Exhibit A
**Minimum Wage and Overtime Damages**

| Work Period | Dates | # Weeks | Days Worked Per Week | Regular Rate | Minimum Wage | Overtime Rate | Hours Worked Per Week | Hours Worked Overtime Per Week | Amount Entitled | Amount Paid *(assuming payment of $75/day) | Difference |
|---|---|---|---|---|---|---|---|---|---|---|---|
| I | 7/15/13 - 10/31/13 | 15 | 5 | $ 7.32 | $ 7.25 | $ 10.98 | 51.25 | 11.25 | $ 6,244.88 | $ 5,625.00 | $ 619.88 |
| II | 11/1/13- 12/30/13 | 8 | 4 | $ 7.32 | $ 7.25 | $ 10.98 | 41 | 1 | $ 2,430.24 | $ 2,400.00 | $ 30.24 |
| III | 12/31/13- 2/28/14 | 8 | 4 | $ 7.32 | $ 8.00 | $ 12.00 | 41 | 1 | $ 2,656.00 | $ 2,400.00 | $ 256.00 |
| IV | 3/1/2014- 10/31/2014 | 35 | 5 | $ 7.32 | $ 8.00 | $ 12.00 | 51.25 | 11.25 | $ 15,925.00 | $ 13,125.00 | $ 2,800.00 |
| V | 11/1/2014- 12/30/14 | 8 | 4 | $7.32 | $ 8.00 | 12 | 41 | 1 | $ 2,656.00 | $ 2,400.00 | $ 256.00 |
| VI | 12/31/14 - 2/28/15 | 8 | 4 | $ 7.32 | $ 8.75 | $ 13.13 | 41 | 1 | $ 2,905.00 | $ 2,400.00 | $ 505.00 |
| VII | 3/1/15- 10/31/15 | 35 | 5 | $ 7.32 | $ 8.75 | $ 13.13 | 51.25 | 11.25 | $ 17,417.97 | $ 13,125.00 | $ 4,292.97 |
| VIII | 11/1/15 - 12/30/15 | 8 | 4 | $7.32 | $ 8.75 | $ 13.13 | 41 | 1 | $ 2,905.00 | $ 2,400.00 | $ 505.00 |
| IX | 12/31/15- 2/28/16 | 8 | 4 | $ 7.32 | $ 9.00 | $ 13.50 | 41 | 1 | $ 2,988.00 | $ 2,400.00 | $ 588.00 |
| X | 3/1/16- 10/31/16 | 35 | 5 | $ 7.32 | $ 9.00 | $ 13.50 | 51.25 | 11.25 | $ 17,915.63 | $ 13,125.00 | $ 4,790.63 |
| XI | 11/1/2016- 12/30/2016 | 8 | 4 | $ 7.32 | $ 9.00 | $ 13.50 | 41 | 1 | $ 2,988.00 | $ 2,400.00 | $ 588.00 |
| XII | 12/31/16- 2/28/17 | 8 | 4 | $ 7.32 | $ 10.50 | $ 15.75 | 41 | 1 | $ 3,486.00 | $ 2,400.00 | $ 1,086.00 |

**Poon v. Apple NYC, 17-cv-9647**

**Minimum Wage and Overtime Damages**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| XIII | 3/1/17 - 10/31/17 | 35 | 5 | $ | 7.32 | $ | 10.50 | $ | 15.75 | 51.25 | 11.25 | $ 20,901.56 | $ 13,125.00 | $ 7,776.56 |
| XIV | 11/1/17 - 11/12/17 | 2 | 4 | $ | 7.32 | $ | 10.50 | $ | 15.75 | 41 | 1 | $ 871.50 | $ 600.00 | $ 271.50 |
| | | | | | | | | | | | **Subtract $1878 in unpaid, promised wages** | $ (1,878.00) | $ 1,878.00 |

**TOTAL**   **$  26,243.77**

Poon v. Apple NYC, 17-cv-9647, Exhibit B

NYLL Spread-of-Hours Damages

| Period | Dates | Number of Weeks | Days Worked Per Week | Days Worked During Period | Minimum Wage | Spread of Hours |
|---|---|---|---|---|---|---|
| I | 7/15/13 - 10/31/13 | 15 | 5 | 75 | $7.25 | 0 |
| II | 11/1/13- 12/30/13 | 8 | 4 | 32 | $7.25 | 0 |
| III | 12/31/13- 2/28/14 | 8 | 4 | 32 | $8.00 | $256.00 |
| IV | 3/1/2014- 10/31/2014 | 35 | 5 | 175 | $8.00 | $1,400.00 |
| V | 11/1/2014- 12/30/14 | 8 | 4 | 32 | $8.00 | $256.00 |
| VI | 12/31/14 - 2/28/15 | 8 | 4 | 32 | $8.75 | $280.00 |
| VII | 3/1/15- 10/31/15 | 35 | 5 | 175 | $8.75 | $1,531.25 |
| VIII | 11/1/15 - 12/30/15 | 8 | 4 | 32 | $8.75 | $280.00 |
| IX | 12/31/15- 2/28/16 | 8 | 4 | 32 | $9.00 | $288.00 |
| X | 3/1/16- 10/31/16 | 35 | 5 | 175 | $9.00 | $1,575.00 |
| XI | 11/1/2016- 12/30/2016 | 8 | 4 | 32 | $9.00 | $288.00 |
| XII | 12/31/16- 2/28/17 | 8 | 4 | 32 | $10.50 | $336.00 |
| XIII | 3/1/17 - 10/31/17 | 35 | 5 | 175 | $10.50 | $1,837.50 |
| XIV | 11/1/17 - 11/12/17 | 2 | 4 | 8 | $10.50 | $84.00 |
| | | | | | TOTAL | $8,379.75 |